```
                UNITED STATES DISTRICT COURT
                EASTERN DISTRICT OF LOUISIANA

CONTINENTAL INSURANCE CO., ET AL.              CIVIL ACTION

V.                                             NOS. 15-4423
                                                    14-2967

L&L MARINE TRANSPORTATION,                     SECTION "F"
INC. ET AL.
```

ORDER AND REASONS

Before the Court is P&I Underwriters' motion for partial summary judgment. P&I seeks a judgment declaring that Atlantic Specialty Insurance Company has a duty to defend its insured. For the reasons that follow, the motion is DENIED.

**Background**

This insurance dispute arises from a marine allision involving multiple boats; one of which, sank.

P&I Underwriters insures L&L Marine Transportation under a protection and indemnity (P&I) policy. Atlantic Specialty also insures L&L, but under a hull and machinery policy. The sole question before the Court is whether Atlantic Specialty, under its hull policy, has a duty to defend L&L against the plaintiffs' claims in the underlying lawsuit asserting L&L's liability for the allision.[1]

---

[1] This case is consolidated with four other cases under the master case number 14-2697. Two of the cases are limitation of liability proceedings. The remaining two are a property damage action and a personal injury action. Here, the parties' dispute is over who must fund L&L's defense in the underlying property damage action.

1

The basic facts in the underlying lawsuit are as follows. The M/V ANGELA RAE, a vessel owned by L&L, was the lead tug in a four-vessel floatilla. The M/V ANGELA RAE and the M/V FREEDOM were positioned behind a barge, the FSB-101, and the M/V MISS DOROTHY was positioned in front of the barge. When the floatilla approached the Sunshine Bridge in St. James Parish, the M/V MISS DOROTHY allided with the bridge and sank.

The insurers of the M/V MISS DOROTHY brought suit against L&L, the owner of the M/V ANGELA RAE, contending that L&L was responsible for the allision and the resulting loss of the M/V MISS DOROTHY. L&L sought coverage from Atlantic Specialty against these claims, but Atlantic Specialty denied coverage. Pursuant to its protection and indemnity policy, P&I has funded L&L's defense in that case. In this dispute, P&I seeks a judgment declaring that Atlantic Specialty is obligated to defend L&L against the claims in the underlying property damage action. Resolution of this motion rests on a contractual interpretation of the Atlantic Specialty hull policy.[2]

I.

---

[2] Importantly, whether L&L's loss is actually covered by the Atlantic Specialty hull policy is *not* at issue in this motion. Rather, this motion focuses strictly on whether, according to the hull policy and the plaintiffs' allegations in the underlying property damage suit, Atlantic Specialty has a duty to fund L&L's defense.

2

Federal Rule of Civil Procedure 56 instructs that summary judgment is proper if the record discloses no genuine dispute as to any material fact such that the moving party is entitled to judgment as a matter of law. No genuine dispute of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the non-moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio., 475 U.S. 574, 586 (1986). A genuine dispute of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The Court emphasizes that the mere argued existence of a factual dispute does not defeat an otherwise properly supported motion. See id. Therefore, "[i]f the evidence is merely colorable, or is not significantly probative," summary judgment is appropriate. Id. at 249-50 (citations omitted). Summary judgment is also proper if the party opposing the motion fails to establish an essential element of his case. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). In this regard, the non-moving party must do more than simply deny the allegations raised by the moving party. See Donaghey v. Ocean Drilling & Exploration Co., 974 F.2d 646, 649 (5th Cir. 1992). Rather, he must come forward with competent evidence, such as affidavits or depositions, to buttress his claim. Id. Hearsay evidence and unsworn documents that cannot be presented in a form that would be admissible in evidence at

3

trial do not qualify as competent opposing evidence. Martin v. John W. Stone Oil Distrib., Inc., 819 F.2d 547, 549 (5th Cir. 1987); FED. R. CIV. P. 56(c)(2). Finally, in evaluating the summary judgment motion, the Court must read the facts in the light most favorable to the non-moving party. Anderson, 477 U.S. at 255.

The interpretation of an insurance policy is a question of law. Cal-Dive Intern., Inc. v. Seabright Ins. Co., 627 F.3d 110, 113 (5th Cir. 2010). Accordingly, summary judgment review is appropriate.

## II.

Louisiana law governs the interpretation of the Atlantic Specialty hull policy. See id. ("The interpretation of a marine policy of insurance is governed by relevant state law . . . ."). Under Louisiana law, "courts interpreting insurance contracts should 'seek to determine the parties' common intent, as reflected by the words in the policy.'" Gabarick v. Laurin Maritime (America), Inc., 650 F.3d 545, 553 (5th Cir. 2011)(quoting Seacor Holdings, Inc. v. Commonwealth Ins. Co., 635 F.3d 675, 680 (5th Cir. 2011). The words in an insurance policy must be given their generally prevailing meaning. Id. (citing La. Civ. Code art. 2047). "[W]hen the language of an insurance policy is clear, courts lack the authority to change or alter its terms under the guise of interpretation." Coleman v. School Bd. Of Richland Parish, 418

4

F.3d 511, 518 (5th Cir. 2005)(quoting La. Ins. Guar. Ass'n v. Interstate Fire & Cas. Co., 630 So.2d 759, 764 (La. 1994)).

"If after applying the other general rules of construction an ambiguity remains, the ambiguous contractual provision is to be construed against the drafter, or, as originating in the insurance context, in favor of the insured." La. Ins. Guar. Ass'n, 630 So.2d at 764. "Ambiguity will also be resolved by ascertaining how a reasonable insurance policy purchaser would construe the clause at the time the insurance contract was entered." Id. "Yet, if the policy wording at issue is clear and unambiguously expresses the parties' intent, the insurance contract must be enforced as written." Id. "The determination of whether a contract is clear or ambiguous is a question of law." Id.

### III.

Atlantic Specialty has denied coverage on two grounds. First, it claims that the hull policy is an "indemnity" policy, rather than a "liability" policy. According to Atlantic Specialty, the hull policy obligates it to *reimburse* L&L for covered defense costs, but lacks the language necessary to create a duty to contemporaneously fund L&L's defense. Second, even if there is a duty to defend, Atlantic Specialty maintains that the claims asserted by the plaintiffs in the underlying lawsuit could not possibly fall within the coverage of the hull policy because the M/V MISS DOROTHY was not "in the tow" of the M/V ANGELA RAE. The

5

Court addresses first the threshold issue of whether the hull policy creates a duty to defend.

A.

Both parties rely on the "Collision and Tower's Liability" provision in the Atlantic Specialty hull policy to support their contradictory positions. That provision provides in part:

And it is further agreed that:

> (a) if the Vessel hereby insured shall come into collision with any other vessel, craft or structure, floating or otherwise, or shall cause any other loss or damage to her tow or to the freight thereof or to the property on board, and the Assured, or the Surety, in consequence of the insured Vessel being at fault, shall become liable to pay and shall pay by way of damages to any other person or persons any sum or sums, we, the Underwriters, will pay the Assured or the Surety, whichever shall have paid, such proportion of such sum or sums so paid as our subscriptions hereto bear to the value of the Vessel hereby insured, provided always that our liability in respect of any one such casualty shall not exceed our proportionate part of the value of the Vessel hereby insured.
>
> (b) in cases where the liability of the Vessel has been contested or proceedings have been taken to limit liability with the consent in writing, of a majority (in amount) of the Underwriters on the hull and machinery, we will also pay a like proportion of the costs which the Assured shall thereby incur or be compelled to pay.

Atlantic Specialty underscores the final phrase in the second paragraph obligating it to pay "a like proportion of the costs which the assured shall thereby incur or be compelled to pay." It

6

urges that this language creates a duty to reimburse L&L for defense costs (i.e., a duty of indemnity), but does not create a duty to defend L&L against covered liabilities. Atlantic Specialty points out that "missing from the policy is any language suggesting an additional duty to defend."

Although Louisiana law governs the interpretation of the hull policy, federal courts have recognized general principles applicable to marine insurance policies. The Fifth Circuit instructs that "P&I policies do not ordinarily create a duty to defend and are indemnity policies, not liability policies. With only a duty to pay covered claims and no duty to defend, reimbursement of costs must be footed on the indemnification, which is limited to the agreed upon policy limit." Gabarick v. Laurin Maritime (America), Inc., 650 F.3d 545, 552-53 (5th Cir. 2011). The Fifth Circuit also explains that "[l]iability insurance policies often have two components: defense and indemnity, and when the policy limits only apply to the indemnity section, the obligation to defend is not capped by the policy limits." N. Am. Specialty Ins. Co. v. Royal Surplus Lines Ins. Co., 541 F.3d 552, 559 (5th Cir. 2008). Accordingly, this Circuit recognizes the distinction between indemnity and liability policies, and acknowledges that the former typically does not create a duty to defend.

To prove it has no duty to defend, Atlantic Specialty relies primarily on two cases decided by this Court.

In <u>Gabarick v. Laurin Maritime (America), Inc.</u>, the Court concluded that a similar provision in a hull policy did not create a duty to defend. Nos. 08-4007, 08-4156, 2009 WL 43096 (E.D. La. Jan. 7, 2009)(Africk, J.) There, the policy stated:

> The Assurer hereby undertakes to make good to the Assured . . . all such loss and/or damage and/or expense as the Assured shall have become liable to pay and shall pay on account of the liabilities, risks, events and/or happenings set forth:
>     (14) Costs, charges, and expenses reasonably incurred and paid by the Assured in defense against any liabilities insured hereunder . . . .

The Court reasoned that the language, "costs . . . reasonably incurred and paid by the Assured," clearly and explicitly provided coverage only for amounts already expended by the insured. <u>Id.</u> at *4. The Court held, "To interpret the language of [the] policy as extending coverage to an obligation to defend when the language refers only to 'costs . . . incurred and paid' would require the Court to read terms into the policy that do not exist and to improperly expand policy coverage." <u>Id.</u>

More recently, the Court reached a similar conclusion in <u>Chet Morrison Contractors, LLC v. OneBeacon American Ins. Co.</u>, No. 14-1958, 2015 WL 1221616 (E.D. La. March 17, 2015)(Vance, J.). There, the hull policy provided: "This contract is to indemnify the Assured for loss resulting from loss of or damage to or liability

8

of each vessel which is prima facie covered . . . ." Id. at *2. The policy then listed the specific risks that it insured against. Characterizing the policy as "first-party property insurance that 'cover[s] damage to or loss of a vessel,'" the Court found "no language creating a duty to defend." Id. at *4 (citing United Nat. Ins. Co. v. Mundell Terminal Serv. Inc., 915 F. Supp. 2d 809, 816 (W.D. Tex. 2012)("[T]he determination of whether the insurer has a duty to defend or a duty to indemnify presumes that there is a provision locatable in the policy that obligates the insurer to undertake such a duty."))

The language used in the policies above differs from the language in the Atlantic Specialty hull policy. In Gabarick, the policy used past-tense language, obligating the insurer to cover "costs . . . *incurred* and *paid*." Here, the language is in present-tense,[3] obligating the insurer to pay "costs which the Assured shall thereby incur or be compelled to pay." Thus, Gabarick is not dispositive. Similarly, in Chet Morrison, the policy makes no mention of covering "costs" that the assured incurs. It too fails to resolve this dispute.

Instead, the Court finds dispositive two cases that examine policy language that is nearly identical to the language presented here.

---

[3] Generally speaking, insurance policies are hardly a paradigm of clarity.

9

In <u>Board of Commissioners of Port of New Orleans v. M/V Rachael Guidry</u>, this Court considered whether an insured's defense costs were included within the policy limit. The policy stated:

> And in cases where the liability of the vessel named herein has been contested or proceedings have been taken to limit liability, with the consent in writing of this Assurer, *this Assurer will also pay a like proportion of the costs, which the Assured shall thereby incur or be compelled to pay* . . . .

425 F. Supp. 661, 663 (E.D. La. 1977)(Rubin, J.)(emphasis added).[4] Although the primary issue before the Court was different, the Court nonetheless noted that "[u]nder a P and I Policy of this type, the policy does not obligate the insurer to defend the insured. But this merely means that, as between the insurer and the insured, it is the duty of the insured to defend." <u>Id.</u> at 663-64. Accordingly, the Court found no duty to defend arose from nearly the exact language used in the Atlantic Specialty hull policy.

Likewise, in <u>Gabarick v. Laurin Maritime (America), Inc.</u>, the Fifth Circuit examined a Collision and Towers Liability Clause that contained identical language to the Atlantic Specialty hull policy: "we will also pay the costs which the insured shall thereby incur or be compelled to pay." 650 F.3d 545, 552-53 (5 Cir. 2011).

---

[4] In this case and in the following case, the policies contained language nearly identical to the first paragraph of the Atlantic Specialty hull policy as well. The Court does not quote that language here for the sake of brevity.

As in Board of Commissioners, the primary issue in that case was whether reimbursement for defense costs went toward the liability limit. However, the Court noted that "the district court has found that the policy in dispute here did not provide a duty to defend and the parties did not appeal that decision." Id. at 553 n. 15. The Court explained further that a policy of this nature ordinarily creates a duty to reimburse defense costs, not a duty to defend.

Precedent in this Circuit has consistently found that the language presented in the Atlantic Specialty hull policy does not create a duty to defend. Maritime commentators agree. See William E. O'Neil, *Insuring Contractual Indemnity Agreements Under CGL, MGL, and P&I Policies*, 21 Tul. Mar. L.J. 359, 373 (1997)("Unlike the CGL or MGL, the standard P & I policy does not expressly provide for a duty to defend the insured. Instead, the standard P & I policy provides only indemnification to the insured for costs and expenses for covered risks."). P&I has failed to point to any language in the hull policy that creates a duty to defend. "[W]hen the language of an insurance policy is clear, courts lack the authority to change or alter its terms under the guise of interpretation." Coleman v. Schoold Bd. Of Richland Parish, 418 F.3d 511, 518 (5th Cir. 2005). Atlantic Specialty does not have a duty to defend L&L in the underlying lawsuit.

B.

Because there is no duty to defend, the Court need not consider at this time whether the claims alleged in the underlying property damage suit fall within the coverage of the hull policy.

Accordingly, P&I Underwriters' motion for partial summary judgment is DENIED.

New Orleans, Louisiana, January 25, 2016

_____
MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE