UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| CONTINENTAL INSURANCE | * | CIVIL ACTION NO: 14-2967 |
| COMPANY, et al | * | C/W CIVIL ACTION NO. 15-4423 |
| VERSUS | * | JUDGE MARTIN L.C. FELDMAN |
| | * | |
| L&L MARINE TRANSPORTATION, | * | MAG. JUDGE DANIEL E. KNOWLES, III |
| INC., et al | * | |
| | * | **THIS PLEADING APPLIES TO** |
| * * * * * * * * * * * * * * * * * * * * * * * * | | **CIVIL ACTION NO. 15-4423** |

## OPPOSITION TO MOTION FOR PARTIAL SUMMARY JUDGMENT

MAY IT PLEASE THE COURT:

Defendant, Atlantic Specialty Insurance Company ("Atlantic Specialty"), respectfully responds to the Motion for Summary Judgment filed by P&I Underwriters subscribing to Policy No. B0507 M13PP07280 ("P&I Underwriters"). (*Rec. Doc. 118*). P&I Underwriters incorrectly assert that the Atlantic Specialty Hull & Machinery policy provides coverage for the loss of the M/V MISS DOROTHY, a vessel owned and operated by Western Rivers Boat Management, Inc., as alleged by The Continental Insurance Company, National Union Fire Insurance Company, and Starr Liability and Indemnity in their *Complaint*. (Civ. A. No. 14:2967 *Rec. Doc. 1*). Specifically, the M/V MISS DOROTHY was not in the "tow" of the M/V ANGELA RAE, and any damage or loss to the M/V ANGELA RAE is not covered by the terms and limitations of the Atlantic Specialty Hull & Machinery policy.

**INCORPORATION OF ATLANTIC SPECIALTY'S**
**MOTION FOR SUMMARY JUDGMENT**

On April 4, 2017, Atlantic Specialty filed a Motion for Summary Judgment (*Rec. Doc. 119*) in response to the Motion for Summary Judgment filed by P&I Underwriters (*Rec. Doc. 118*). These motions are essentially cross motions on the ultimate issue of coverage. In the interest of brevity and judicial economy, Atlantic Specialty respectfully incorporates herein the assertions of its Motion for Summary Judgment (*Rec. Doc. 119*) as if copied *in extenso*.

To briefly summarize the assertions of Atlantic Specialty's Motion for Summary Judgment, the Collision and Towers Liability Clause incorporated into the Hull & Machinery policy affords coverage for third-party losses in four isolated and specific circumstances:

- The M/V ANGELA RAE comes into contact with another vessel or structure;
- The M/V ANGELA RAE strands her tow;
- The M/V ANGELA RAE causes her tow to come into contact with another vessel or structures; or
- The M/V ANGELA RAE causes any other loss or damage to her tow.

It is uncontested that the M/V MISS DOROTHY was a towing vessel under charter to CGB Enterprises, Inc. ("CGB") to transport barges, such as the FSP 101, up and down the Mississippi River. Insofar as the M/V ANGELA RAE was also chartered by CGB with the same charge, the tow of the M/V ANGELA RAE is the FSP 101, not the M/V MISS DOROTHY. Accordingly, the loss of the M/V MISS DOROTHY does not fall within the scope of coverage of the Atlantic Specialty Hull & Machinery policy.

**RESPONSE TO P&I UNDERWRITERS' MOTION FOR SUMMARY JUDGMENT**

As these cross-motions concern an insurance coverage dispute, this Court is asked to determine the "intent" of the Atlantic Specialty Hull & Machinery policy, specifically with respect to third-party property damages. With respect to a particular policy provision, the parties' intent is to be determined in accordance with the general, ordinary, plain and popular meaning of the words used in the policy, unless the words have acquired a technical meaning. *Louisiana Ins. Guar. Ass'n v. Interstate Fire & Cas. Co.*, 630 So. 2d 759, 763 (La. 1994), citing La. Civ. Code Art. 2047. If the policy concerns terms of art or technical terms, those terms are to be are to be interpreted with respect to their technical meaning. *Smith v. Reliance Ins. Co. of Illinois,* 01-888 (La.App. 5 Cir. 1/15/02), 807 So.2d 1010 at 1014-15. When those technical words or terms of art are unambiguous, the parties' intent is clear and the insurance contract should be enforced as written. *Id*. An insurance policy should not be interpreted in an unreasonable or strained manner so as to enlarge or restrict its provisions beyond what is reasonably contemplated by its terms or so as to achieve an absurd conclusion. *Mangerhine v. Reaves,* 2010-1052, (La.App. 1 Cir. 3/25/11), 63 So.3d 1049, 1053-54, *citing Magnon v. Collins,* 98–2822, p. 7 (La.7/7/99), 739 So.2d 191, 196.

Through its *Motion for Partial Summary Judgment*, P&I Underwriters are attempting to enlarge the scope of "towage" to an absurd degree in an effort to avoid their own contractual obligations. The common understanding of "towage" describes a relationship distinguishable from the facts presented in the Complaint. Specifically, towage has been traditionally defined as the service rendered by one vessel to aid the propulsion of, or to expedite the movement of, another vessel. *Stevens v. The White City*, 285 U.S. 195, 200, 52 S.Ct. 347, 349, 76 L.Ed. 699, 702 (1932). *See also Mississippi Valley Barge Line Co. v. Indian Towing Co.*, 232 F.2d 750, 753

n.5, (5th Cir. 1956).  Similarly, a contract which provides that a tug will move a barge is one of towage. *State ex rel. Dept. of Transp. And Development v. Central Gulf Towing, LLC*, 07-166, p. 9 (La.App. 5 Cir. 10/30/07), 971 So.2d 1163, 1168, *citing Agrico Chemical Co. v. M/V BEN W. MARTIN*, 664 F.2d 85, 90 (5th Cir. 1981). This Court has recently cited C.F.R. §15.910 (now 46 C.F.R. § 27.101) which defines a "towing vessel" as "a commercial vessel engaged in, or intending to engage in, pulling, pushing, or hauling alongside, or any combination of pulling, pushing, or hauling alongside." *Shell Offshore, Inc. v. Tesla Offshore, LLC*, 2015 WL 711796 (E.D.La. Feb. 18, 2015). Inherent in the interpretation of "towage" or "to tow" is the understanding that a vessel will be used to move another vessel from one destination to another.

In the context of assist tugs, the decision of *Rebstock v. Gilchrist Transp. Co.* is particularly instructive. In *Rebstock*, a flotilla comprised of two tugs and a steamer allided with a moored vessel near the port of Buffalo, New York. *Rebstock v. Gilchrist Transp. Co.*, 132 F. 174, 175 (W.D.N.Y. 1904).  The allision occurred after one of the tugs, in an assist role, became disabled, causing the flotilla to veer into the moored vessel. *Id*.  The court noted that the testimony clearly showed that the allision was caused by the negligence of the assist tug. *Id*. at 178.

As it pertains to the present matter, the *Rebstock* court explained that although the assist tug's services may not have been required at the time the allision occurred, it was under contract to safely transport the steamer, along with another tug, and bore a common responsibility to the tow. *Id*. at 180.  Both tugs were engaged in a "common enterprise" to assist in the navigation of the steamer from one destination to another, regardless of which tug was tied to the bow or stern steamer. *Id*. Contractually, each tug was charged with the same responsibility − to expedite the movement of a vessel from one point to another.

4

Applying *Rebstock*, the M/V MISS DOROTHY and the M/V ANGELA RAE were engaged in the common enterprise of transporting the FSP 101 downriver on December 29, 2013. It is undisputed that both the M/V MISS DOROTHY and the M/V ANGELA RAE were chartered by CGB to perform this task. There is no evidence, whatsoever, to suggest that the M/V ANGELA RAE was tasked with towing the MV MISS DOROTHY at that time, or any time. Rather, it was the task of both vessels to provide steering and propulsion to their tow, the FSP 101.

In this respect, the plain meaning of the term "to tow" is being misconstrued by P&I Underwriters, and the jurisprudence cited in their Motion for Summary Judgment is distinguishable. For example, in *Chitty v. M/V Valley Voyager*, the VALLEY VOYAGER was a pushboat used to transport "large river tows to and from the Port of New Orleans with her destination and departure point being the Valley fleet." *Chitty v. M/V VALLEY VOYAGER,* 284 F.Supp. 297, 299 (E.D.La. 1968). Another vessel, the TIDE LAND, pushed a fuel flat to the VALLEY VOYAGER, attached to the vessel, and was to remain tied to the VALLEY VOYGER until fueling was completed. *Id*. During this task, the VALLEY VOYAGER would remain underway, providing all propulsion and steering for both vessels. *Id*. at 300. Undeniably, the TIDE LAND became part of the flotilla in the tow of the VALLEY VOYAGER.

During a turning maneuver, the port side of the TIDE LAND was pushed laterally through the water and began to list. *Id*. at 300-01. The TIDE LAND then took on water and ultimately sank. *Id*. After trial, the court held that the captain of the VALLEY VOYAGER failed to keep his tow under proper observation. Id. The TIDE LAND was considered to be in the tow of the VALLEY VOYAGER, as it had another vessel, the TIDE LAND, under her control and her speed. *Id*. at 303. In this arrangement, the VALLEY VOYAGER was obligated to determine

what acts were to "be done for the safety and direction of the tow," and to avoid injury to the tow. *Id.* at 303-04.

In *Chitty*, the VALLEY VOYAGER was in full control of the speed and maneuvering of the TIDE LAND, as well as the other vessels in her tow. There was no dispute that the VALLEY VOYAGER facilitated the movement of the TIDE LAND during the period of time in which fueling was ongoing. In the present matter, the Complaint does not allege that the M/V MISS DOROTHY was powerless at the time of the allision. Rather, the Complaint states that "the M/V MISS DOROTHY, under the command of Captain Joseph Colomb, was traversing the Mississippi River with the barge FSB 101, which was chartered by defendant CGB Enterprises, Inc., in tow..." *Rec. Doc. 1*. Further, the Complaint states that the M/V MISS DOROTHY was assisting the M/V ANGELA RAE and the M/V FREEDOM in the towage of the FSB 101. *Rec. Doc. 1*. There is no allegation in the *Complaint* that the M/V ANGELA RAE was towing the M/V MISS DOROTHY at the time of the allision, or that the M/V MISS DOROTHY surrendered all steering and propulsion to the M/V ANGELA RAE. These facts are readily distinguishable from the circumstances of *Chitty*.

The distinction between *Chitty* and the present matter is supported by *Shell Offshore, Inc. v. Tesla Offshore, LLC*. In *Shell*, the object purportedly towed was an eighty-nine pound metal sonar device pulled by a winch cable, also called a "towfish" or "fish." *Shell Offshore, Inc. v. Tesla Offshore, LLC*, 2015 WL 711796, p. *1 (E.D.La. Feb. 18, 2015). Notwithstanding its discussion of whether the "towfish" was a vessel, the court concluded that it was being towed by the M/V INTERNATIONAL THUNDER because the M/V INTERNATIONAL THUNDER provided its motive power and steering by means of a towing line. *Id.* at p. *2-3. The towfish did not provide its own means of power or steering, and thus was "in the tow" of the M/V

INTERNATIONAL THUNDER when it was being pulled. In the present matter, the undisputed facts establish that the M/V MISS DOROTHY was assisting in pushing the FSP 101 downriver, providing both steering and propulsion on the voyage. The M/V MISS DOROTHY was not being pushed or pulled by the M/V ANGELA RAE or any other vessel. As such, *Shell* does not support the assertions of P&I Underwriters with respect to the issue of coverage in this matter.

Similarly, the decision of *Bronx Towing Line v. Continental Insurance Co.* is also distinguishable. In *Bronx Towing Line*, the Eastern District of New York applied a tower's liability clause to a marine casualty resulting from the failure to properly berth a scow. *Bronx Towing Line v. Continental Insurance Co.,* 108 F. Supp. 298 (E.D.N.Y. 1952). Unlike the present matter, there was no dispute that the scow which was unsafely berthed was in the tow of the insured vessel. The breach of that obligation, which was essentially the completion of the act of towage, was the cause in fact of the damage to the scow. *Id*. at 300.  Thus, the alleged loss constituted damage caused by the assured vessel to her tow. For this reason, the court concluded that the loss fell within the scope of the tower's liability insurance policy.

P&I Underwriters are attempting to expand the "chain of causation" theory of *Bronx Towing Line* to an overreaching "house that Jack built" analysis. Simply because the M/V ANGELA RAE is a towing vessel does not mean that all claims against it fall within the scope of the Collision and Towers Liability clause. Rather, the cause of the loss in *Bronx Towing Line* was the failure of the tug to safely berth of the scow, its tow. As the court stated,

> There is no suggestion anywhere that there was any independent intervening cause of damage to the scow, and no question that the proximate cause of the scow's damage was the negligence of the tug in providing an unsafe birth.

*Id*. at 299.  For this reason, the insurer was incorrect in asserting that there was no coverage under the tower's liability clause of its policy because the tow had been completed. Because the

7

alleged negligence occurred during the act of towage, specifically the improper mooring of the scow, the alleged damage to the scow (as the tow) was caused by the negligence of the tug. This is a clear and logical "chain of causation" directly related to the towage of the scow.

For the same reason that *Chitty* and *Shell* are inapplicable, so too is *Bronx Towing Line*. The *Complaint* alleges that the M/V MISS DOROTHY was a towing vessel, not a part of the tow of the M/V ANGELA RAE. Comparing this fact to the Collision and Towers Liability clause, the loss of the M/V MISS DOROTHY does not constitute damage to the "tow" of the M/V ANGELA RAE. Indeed, there are no allegations that the FSP 101, the actual tow of the M/V ANGELA RAE and the M/V MISS DOROTHY, contacted or was damaged by the Sunshine Bridge or another vessel. Thus, there is no basis to implicate the Collision and Towers Liability clause in an effort to impose an obligation of coverage upon Atlantic Specialty.

## **CONCLUSION**

The facts of the *Complaint* do not fall within the scope of the Collision and Towers Liability clause of the Atlantic Specialty Hull & Machinery policy. Understanding that the actual "tow" of the M/V ANGELA RAE is the FSP 101, a negative answer to each of the following questions precludes coverage under the Atlantic Specialty Hull & Machinery policy:

- Did M/V ANGELA RAE comes into contact with another vessel or structure?
- Did the M/V ANGELA RAE strands the FSP 101?
- Did the M/V ANGELA RAE causes the FSP 101 to come into contact with another vessel or structures?
- Did the M/V ANGELA RAE causes any other loss or damage to the FSP 101?

The undisputed facts of this matter, as well as the allegations of the Complaint, fail to provide an affirmative answer to any of these questions. Without affirmation of any of these circumstances, there is no basis for coverage under the Atlantic Specialty Hull & Machinery policy. Accordingly, P&I Underwriters' Motion for Summary Judgment should be denied.

**CERTIFICATE OF SERVICE**

I hereby certify that on the 11<u>th</u> day of April, 2017, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

/s/ Corey P. Parenton
_____

Respectfully submitted,

**/s/ Corey P. Parenton**
_____
ANTHONY J. STAINES(#12388)
CRAIG W. BREWER (#23665)
COREY P. PARENTON (#32918)
3500 North Causeway Boulevard
Suite 820
Metairie, Louisiana 70002
Telephone: (504) 838-0019
Facsimile: (504) 838-0043
*Counsel for Atlantic Specialty Insurance Co.*