UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

CONTINENTAL INSURANCE
COMPANY, ET AL.                                  CIVIL ACTION

V.                                               NO. 14-2967 c/w
                                                 15-4423*

L&L MARINE TRANSPORTATION,
INC., ET AL                                      SECTION "F"

                                                 *Applies to: 15-4423

ORDER AND REASONS

Before the Court are P&I Underwriters' and Atlantic Specialty Insurance's cross-motions for summary judgment. For the following reasons, P&I Underwriters motion for summary judgment is GRANTED and Atlantic's motion for summary judgment is DENIED.

**Background**

This insurance dispute arises from a marine allision involving multiple boats; one of which, sank.[1] P&I Underwriters insures L&L Marine Transportation under a protection and indemnity (P&I) policy. Atlantic Specialty also insures L&L, but under a hull and machinery policy.[2]

---

[1] The Court assumes familiarity with this dispute and incorporates the facts it previously stated in its Order and Reasons dated January 25, 2016 for this civil matter.

[2] This case is consolidated with four other cases under the master case number 14-2697. Two of the cases are limitation of liability proceedings. The remaining two are a property damage action and a personal injury action. Here, the parties' dispute is over who must fund L&L's defense in the underlying property damage action.

1

The basic facts in the underlying lawsuit are as follows. The M/V ANGELA RAE, a vessel owned by L&L, was the lead tug in a four-vessel flotilla. The M/V ANGELA RAE and the M/V FREEDOM were positioned behind a barge, the FSB-101, and the M/V MISS DOROTHY was positioned in front of the barge. When the flotilla approached the Sunshine Bridge in St. James Parish, the M/V MISS DOROTHY allided with the bridge and sank.

The insurers of the M/V MISS DOROTHY brought suit against L&L, the owner of the M/V ANGELA RAE, contending that L&L was responsible for the allision and the resulting loss of the M/V MISS DOROTHY. L&L sought coverage from Atlantic Specialty against these claims, but Atlantic Specialty denied coverage. Pursuant to its protection and indemnity policy, P&I has funded L&L's defense in that case. In this dispute, P&I seeks a judgment declaring that Atlantic Specialty has a duty to reimburse the defense costs of L&L relative to the allegations made against them in civil action 14-2967. Atlantic Specialty files a cross-motion for summary judgment on the basis that its hull policy does not provide coverage for the damages allegedly incurred by the M/V MISS DOROTHY and a dismissal of P&I's complaint against it.[3]

---

[3] The parties refer to these motions as cross-motions for summary judgment. However, P&I claims it seeks summary judgment that Atlantic owes it reimbursement for defense costs and Atlantic seeks summary judgment that its hull policy does not apply to the underlying incident. The Court construes these motions as cross-motions for summary judgment to determine which policy covers the

2

I.

Federal Rule of Civil Procedure 56 instructs that summary judgment is proper if the record discloses no genuine dispute as to any material fact such that the moving party is entitled to judgment as a matter of law. No genuine dispute of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the non-moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio., 475 U.S. 574, 586 (1986). A genuine dispute of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The Court emphasizes that the mere argued existence of a factual dispute does not defeat an otherwise properly supported motion. See id. Therefore, "[i]f the evidence is merely colorable, or is not significantly probative," summary judgment is appropriate. Id. at 249-50 (citations omitted). Summary judgment is also proper if the party opposing the motion fails to establish an essential element of his case. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). In this regard, the non-moving party must do more than simply deny the allegations raised by the moving party. See Donaghey v. Ocean Drilling & Exploration Co., 974 F.2d

---

allegations against L&L based on the arguments presented by the parties, which of course in turn determines whether Atlantic is responsible for reimbursement of defense costs incurred by P&I Underwriters.

3

646, 649 (5th Cir. 1992). Rather, he must come forward with competent evidence, such as affidavits or depositions, to buttress his claim. Id. Hearsay evidence and unsworn documents that cannot be presented in a form that would be admissible in evidence at trial do not qualify as competent opposing evidence. Martin v. John W. Stone Oil Distrib., Inc., 819 F.2d 547, 549 (5th Cir. 1987); Fed. R. Civ. P. 56(c)(2). Finally, in evaluating the summary judgment motion, the Court must read the facts in the light most favorable to the non-moving party. Anderson, 477 U.S. at 255.

The interpretation of an insurance policy is a question of law. Cal-Dive Intern., Inc. v. Seabright Ins. Co., 627 F.3d 110, 113 (5th Cir. 2010). Accordingly, summary judgment review is appropriate.

## II.

Louisiana law governs the interpretation of marine insurance contracts. See id. ("The interpretation of a marine policy of insurance is governed by relevant state law . . . ."). Under Louisiana law, "courts interpreting insurance contracts should 'seek to determine the parties' common intent, as reflected by the words in the policy.'" Gabarick v. Laurin Maritime (America), Inc., 650 F.3d 545, 553 (5th Cir. 2011)(quoting Seacor Holdings, Inc. v. Commonwealth Ins. Co., 635 F.3d 675, 680 (5th Cir. 2011). The words in an insurance policy must be given their generally prevailing meaning. Id. (citing La. Civ. Code art. 2047). "[W]hen the language

4

of an insurance policy is clear, courts lack the authority to change or alter its terms under the guise of interpretation." Coleman v. School Bd. Of Richland Parish, 418 F.3d 511, 518 (5th Cir. 2005)(quoting La. Ins. Guar. Ass'n v. Interstate Fire & Cas. Co., 630 So.2d 759, 764 (La. 1994)).

"If after applying the other general rules of construction an ambiguity remains, the ambiguous contractual provision is to be construed against the drafter, or, as originating in the insurance context, in favor of the insured." La. Ins. Guar. Ass'n, 630 So.2d at 764. "Ambiguity will also be resolved by ascertaining how a reasonable insurance policy purchaser would construe the clause at the time the insurance contract was entered." Id. "Yet, if the policy wording at issue is clear and unambiguously expresses the parties' intent, the insurance contract must be enforced as written." Id. "The determination of whether a contract is clear or ambiguous is a question of law." Id.

III.

P&I Underwriters moves for a summary judgment holding Atlantic responsible for reimbursing the defense costs of its insured, L&L.[4] P&I contends that the complaint filed against L&L

---

[4] On January 25, 2016, the Court issued an Order and Reasons denying P&I Underwriters' motion for partial summary judgment that Atlantic's policy provided for a duty to defend L&L. At that time, the Court did not reach the merits of which insurance policy covered the underlying accident and allegations against L&L. The

5

is relevant to establish whether the M/V MISS DOROTHY was being towed or whether she was part of the towing responsibility with the M/V ANGELA RAE. The relevant allegation, P&I argues, is paragraph 16 of the complaint that states:

> At the time of the allision, the M/V MISS DOROTHY was assisting the M/V ANGELA RAE, and the M/V FREEDOM, with towage of FSB-101. **The M/V ANGELA RAE was the lead tug and was responsible for coordination of the tow.** Both the M/V ANGELA RAE and M/V FREEDOM were positioned behind FSB-101, pushing it down the river, and the M/V MISS DOROTHY was positioned at the head of FSB-101.

(emphasis added). The plaintiffs in that lawsuit, therefore, allege that L&L is responsible for the loss of the MISS DOROTHY because the ANGELA RAE was responsible for the coordination of the tow, it failed in that duty, and caused the MISS DOROTHY to allide with the Sunshine Bridge and sink.

P&I Underwriters rely on Atlantic's hull policy issued to L&L for the ANGELA RAE as support for its alleged duty to reimburse P&I Underwriters. The "Collision and Tower's Liability" provision in Atlantic's hull policy provides:

> If the Vessel hereby insured shall come into collision with any other vessel, craft or structure, floating or otherwise (including her tow); or shall strand her tow or shall cause her tow to come into collision with any other vessel, craft or structure, floating or otherwise, or shall cause any other loss or damage to her tow or to the freight thereof or to the property on board, and the Assured, or the Surety, in consequence of the insured Vessel being at fault, shall become liable to pay and shall pay by way of damages to any other person or

---

parties now move the Court to address the remainder of this insurance dispute.

> persons any sums, we, the Underwriters, will pay the Assured or the Surety, whichever shall have paid, such proportion of such sum or sums so paid as our subscriptions hereto bear the value of the Vessel hereby insured, provided always that our liability in respect of any one such casualty shall not exceed our proportionate part of the value of the Vessel hereby insured ….

Because the allegations against L&L arise out of towage, the hull policy is responsible for defense costs, according to P&I Underwriters. It further contends that the question for coverage is solely based on the allegations in the complaint against L&L, not whether the ANGELA RAE actually caused the MISS DOROTHY's damage. Whether the allegations are construed broadly or narrowly, P&I Underwriters argues that the allegations trigger a duty to reimburse under the hull policy because all interpretations of the complaint relate to the ANGELA RAE towing the MISS DOROTHY.

IV.

In its cross-motion for summary judgment, Atlantic seeks a determination that its hull policy does not provide coverage for the damages allegedly incurred by the MISS DOROTHY, and, as such P&I Underwriters' complaint against it should be dismissed. It contends that the collision and tower's liability provision of its hull policy provides coverage in limited circumstances, none of which are present in this matter. Atlantic argues that for its coverage to be triggered, damage to the tow of the ANGELA RAE must have ensued. Further, it contends that the complaint does not

7

allege that the MISS DOROTHY was in the tow of the ANGELA RAE; instead Atlantic urges that the MISS DOROTHY was *assisting* the ANGELE RAE with her towage of the FSB 101.

In support, Atlantic points to a different allegation in the complaint against L&L, which alleges:

> On or about December 29, 2013, the M/V MISS DOROTHY, under the command of Captain Joseph Colomb, was traversing the Mississippi River with the barge FSB 101, which was charted by defendant CGB Enterprises, Inc., in tow when it allided with a portion of the bridge fender system at Pier 4 of the Sunshine Bridge located at LA 70 in St. James Parish.

However, the next paragraph in the complaint is the one P&I relies on, which states that the "ANGELA RAE was the lead tug and was responsible for the coordination of the tow."

Atlantic says that its Collision and Tower's Liability clause provides coverage in four circumstances: (1) The insured vessel collides with another vessel, craft, structure, or her tow; (2) The insured vessel strands her tow; (3) The insured vessel causes her tow to collide with another vessel, craft, or structure; or (4) The insured vessel causes any other loss or damage to her tow, or to the freight thereof.[5] Because, Atlantic contends, the ANGELA

---

[5] Notably, Atlantic mainly addresses why the four coverage areas of its hull policy are not triggered by the underlying incident involving its insured's vessel, the ANGELA RAE. It mentions the coverage terms in P&I Underwriters' policy only briefly. For the sake of completeness, the P&I policy provision Atlantic claims should cover the incident provides P&I Underwriters have agreed to indemnity L&L for:

8

RAE did not collide with the MISS DOROTHY or the Sunshine Bridge, and because the MISS DOROTHY was not "in the tow" of the ANGELA RAE, none of the four coverage areas are triggered. Accordingly, its hull policy is not implicated and it does not owe coverage, or reimbursement, to P&I Underwriters. The Court disagrees.

V.

The parties do not dispute whether the allegations in the complaint control which policy is liable for defense costs and coverage. Atlantic is correct in pointing out that the complaint against L&L alleges that the MISS DOROTHY was assisting the ANGELA RAE and the FREEDOM in towing the FSB 101. However, the allegation against L&L further states that the ANGELA RAE was the *lead tug and was responsible for coordination of the tow.* The record indicates that this allegation, that the ANGELA RAE was the lead

---

> Liability for loss of or damage to any other vessel or craft, or to property on such other vessel or craft, not caused by collision, provided such liability does not arise by reason of a contract made by the assured.

In response, P&I argues that while the P&I policy is technically broader than the hull policy, it is only intended to effect coverage where the hull policy does not. The Court agrees. Specifically, paragraph 2 under "US Collision and Tower's Liability Endorsement (01.08.13)" of the P&I Policy states that P&I Underwriters agree to indemnity its insured, L&L, for sums not recoverable under the Collision Clause of a hull and machinery policy when the insured's liability exceeds amounts insured against in the collision and tower's liability coverage. Thus, P&I Underwriters specifically intended to only cover "collision and tower" instances *after* policy limits were expended under the hull and machinery policy.

9

tow, is agreed to by the parties as evidenced in the statements of uncontested material facts in P&I Underwriters' motion for summary judgement and Atlantic's opposition to the motion.

The vessel performing the towage is obligated to exercise reasonable care in maneuvering its tow. See In re Luhr Bros., Inc., Nos. 05-1434 & 05-1897, 2007 WL 2042258, at *4 (E.D. La. July 12, 2007); Chitty v. M/V VALLEY VOYAGER, 284 F. Supp. 297, 302-03 (E.D. La. 1968). "When a tug is in charge of a flotilla, her obligation to use due care includes, among others, the duty to keep her tow under observation, to maintain proper speed in order to keep her tow under control, and to care for the safety of her tow in general." Chitty, 284 F. Supp. at 303. "Where damages are caused by a casualty involving a tow or an entire flotilla, courts employ the concept of the 'dominant mind' to place liability on the tug . . . ." Plains Pipeline, L.P. v. Great Lakes Dredge & Dock Co., 54 F. Supp. 3d 586, 589 (E.D. La. 2014) (internal quotations and citations omitted). Importantly, "[t]he 'dominant mind' doctrine provides that only that vessel in control of the operation is liable, even if the entire flotilla causes damage." Id.; see also Chevron U.S.A. Inc. v. Progress Marine Inc., 1980 A.M.C. 1637 (E.D. La. 1979), aff'd 632 F.2d 893 (5th Cir. 1980). When the tug provides the motive power and becomes the dominant mind, "the tug 'is responsible for the safe navigation of the flotilla' and 'has the duty to exercise such reasonable care and skill as prudent

navigators would exercise under similar circumstances.'" Plains Pipeline, 54 F. Supp. 3d at 589; see also Dow Chemical Co. v. Tug THOMAS ALLEN, 349 F. Supp. 1354, 1362 (E.D. La. 1972).

It follows that if the ANGELA RAE was the lead tug, which the record indicates the parties do not contest, then the hull policy is triggered. Under the "dominant mind" concept, the ANGELA RAE, as the uncontroverted lead tug, owed a responsibility to the entire flotilla; this included a duty to the MISS DOROTHY. As explained, case law places the duty on the lead tug, even if other vessels in the flotilla could be responsible. Accordingly, the insurance policy covering the ANGELA RAE for damage caused during her tow is liable to the damaged vessel. Specifically, the hull policy has four areas of coverage, including a category that covers instances where the "insured vessel causes her tow to collide with another vessel, craft, or *structure*." There is no dispute whether the MISS DOROTHY allided with the Sunshine Bridge while part of the flotilla. As the lead tug, the ANGELA RAE is liable for causing "her tow to collide with another . . . structure." See Plains Pipeline, 54 F. Supp. 3d at 589. Giving the policy terms its textual meaning, the MISS DOROTHY's allision with the Sunshine Bridge comports with a specific coverage term of Atlantic's hull policy as well as this Circuit's concept of the "dominant mind." Accordingly, no contested issue of material fact exists as to whether the ANGELA RAE was lead tow or whether the MISS DOROTHY

allided with the Sunshine Bridge while part of the tow of the FSB 101. Therefore, Atlantic's hull policy is implicated and it owes coverage to L&L and reimbursement for defense costs to P&I Underwriters.

IT IS ORDERED: that P&I Underwriters' motion for summary judgment is GRANTED and Atlantic's cross-motion for summary judgment is DENIED. The case is hereby dismissed.

New Orleans, Louisiana, April 19, 2017

_____
MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE