UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

CONTINENTAL INSURANCE
COMPANY, ET AL.                                            CIVIL ACTION

V.                                                         NO. 14-2967

L&L MARINE TRANSPORTATION                                  SECTION "F"
INC., ET AL.

## ORDER AND REASONS

Before the Court is the parties' proposed joint case management order and Joshua Deranger's motion to bifurcate the trial. For the following reasons, the case management order is ADOPTED and the motion to bifurcate is GRANTED consistent with this Order and Reasons. The liability portion of the case will be tried as a bench trial, but the damages portion, if any, will be tried at a later date to be set by the Court. The Court defers rulings on what forum will hear Deranger's damages claims, and whether remaining damages issues tried in this Court will be tried to the bench or to a jury.

**Background**

Three vessels were tasked to transport one barge on the Mississippi River. One of those vessels allided with a bridge and sank, rendering it a total loss. Now, the vessels' owners, insurers, and those personally injured during the allision are seeking to determine whether the other two vessels were negligent and unseaworthy, and thus liable for the resulting losses and

1

injuries. These issues are scheduled to be tried on March 5, 2018. In an effort to clarify the trial issues, the Court ordered the parties to submit a joint case management order and invited them to file a motion to bifurcate, if needed. The parties submitted a joint case management order and Joshua Deranger filed a contested motion to bifurcate.

The issues before the Court stem back to December 29, 2013, when three vessels, M/V MISS DOROTHY, M/V ANGELA RAE, and M/V FREEDOM transported a barge, FSP 101, southbound on the Mississippi River. FSB 101 is owned by Consolidated Grain & Barge, Inc. CGB hired the vessels to transport the barge and its cargo from Reserve, LA to Convent, LA. The vessels successfully navigated the barge to Convent and had offloaded the cargo.

While heading southbound to LaPlace, the master of MISS DOROTHY, Captain Joseph Colomb, instructed his deckhands, Joshua Deranger and Matt Lynch, to change the fuel filters of the starboard and port engines. When Deranger and Lynch changed the filters of the starboard engine, they shut it down, allegedly causing a drag on the flotilla. When the flotilla attempted to pass under the Sunshine Bride, MISS DOROTHY allided with the bridge. The vessel sustained a puncture in the hull, which caused water to rapidly enter the engine room, ceasing operation of the port engine and the generator, eventually resulting in a total loss for the vessel. The bridge was also damaged. Joshua Deranger,

the deckhand on the MISS DOROTHY, was still in the engine room during the allision. When the water flooded the room, it moved a storage box, trapping Deranger's leg between the box and the starboard engine. Matt Lynch helped to free him, but Deranger's lower right leg was injured. He sustained a compound fracture of his tibia and fibula, and ultimately underwent surgery that placed a rod and screws in his tibia. Captain Colomb also alleges personal injuries. Following the allision, the vessel owners and insurers, as well as those injured, filed a number of claims against each other in five separate actions (14-2967, 15-1473, 15-1870, 15-1942, 15-4423), which have been consolidated into one lead case, 14-2967.

The insurers of the owner (Western Rivers Boat Management, Inc.) of the sunken MISS DOROTHY initiated the present case on December 29, 2014. The insurers—Continental Insurance Company, National Union Fire Insurance Company, and Starr Liability and Indemnity—filed a complaint in this Court against L&L Marine Transportation, Inc. (operator of Angela), C.J.L., Inc. (owner of Angela), River Ventures, LLC (owner and operator FREEDOM), M/V ANGELA RAE *in rem*, M/V FREEDOM *in rem*, and FSB 101 *in rem*. They alleged that the defendants caused the allision, were unseaworthy, and were negligent in their training of the master and crew, equipping the vessels with proper navigational tools, and in their navigation. In a separate action, C.J.L. and L&L filed a complaint

for exoneration from, or in the alternative limitation of liability, of M/V ANGELA RAE. Five days later, River Ventures did the same for M/V FREEDOM. Immediately, the Court issued an injunction restraining the prosecution of any claims involving ANGELA RAE or FREEDOM, or their insurers and underwriters, until the Court determined whether the vessels' liability should be limited or exonerated. Shortly thereafter, the Court consolidated these claims into the master case (14-2967).

In response to the limitations actions, the other parties filed answers, complaints, and counterclaims.[1] Notably, Joshua Deranger, the MISS DOROTHY deckhand injured during the collision, answered the complaints and filed counter-claims and third-party complaints against the other parties alleging that his injuries were the product of all three vessels' negligence in either causing or failing to prevent the allision. Previous to the limitation proceedings, Deranger filed his complaint for damages in Louisiana state court at the Twenty-Third Judicial District Court for the Parish of St. James, invoking the state court's jurisdiction pursuant to the "saving to suitors" clause of 28 U.S.C. § 1333(1) and requested a trial by jury. When the vessel owners filed limitation actions in this Court, the state court proceedings were stayed (and still are, pending resolution of the limitation

---

[1] See the Court's Order and Reasons, dated 10/26/17, for a detailed outline of the procedural history in this case.

actions). In his responses to the limitation complaint, he again requested a jury and asked to adjudicate the claims between him and his Jones Act employer in state court. He also filed a separate request for a jury trial on December 18, 2015. Likewise, in his answer to the limitation actions, Captain Joseph Colomb sued the other vessel interests, claiming negligence for his personal injuries. He also requested a jury trial.

The issues before the Court are of two different characters: liability and damages. In an effort to clarify the issues to be presented at trial on March 5, 2018 and to better understand the parties' positions, the Court ordered that the parties submit a joint proposed case management order by January 26, 2018, accompanied by a memorandum, that outline the issues the parties' anticipate to present at trial. The Court also invited the parties' to submit any motions to bifurcate. Accordingly, the parties submitted their joint case management order, and outlined the liability issues to be tried. The parties are in agreement that the liability issues will be tried by the Court. The parties disagree, however, on the manner in which damages will be tried. They contest whether the trial should be bifurcated, whether some of the damages issues will be tried in state court, and if the damages are tried in federal court, whether there will be a jury or bench trial.

I.

Federal Rule of Civil Procedure 42(b) provides that "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims." However, district courts must be mindful that bifurcation is only appropriate if the issues are "so distinct and separable from the others that a trial of it alone may be had without injustice." Laitram Corp. v. Hewlett-Packard Co., 791 F. Supp. 113, 115 (E.D. La. 1992) (quoting Swofford v. B&W, Inc., 336 F.2d 406, 415 (5th Cir. 1964)). Even if bifurcation would promote judicial economy, it is still inappropriate if it would cause unnecessarily delay or additional expense. Id. Nonetheless, it is not unusual for a court to bifurcate the trial between the liability and damage issue. See Swofford, 336 F.2d at 415 (5th Cir. 1964); State of Ala. V. Blue Bird Body Co., Inc., 573 F.2d 309, 311-12 (5th Cir. 1978).

II.

A.

The parties agree on the issues to be adjudicated in the liability phase of the litigation. All are in agreement that those issues are to be tried to the Court. Accordingly, the Court adopts that portion of the case management order (discussed in detail below).

The parties disagree as to whether or not damages will be tried as a bench or jury trial, or possibly even referred to state court. In his motion to bifurcate, Deranger requests that in the event the vessel owners cannot limit their liability, his damages claim should be tried in state court. Deranger points to the Saving to Suitors clause, which permits claimants to adjudicate their claims in state court through a jury trial. Deranger contends that the liability portion of the trial is in federal court because of the limitation action, but if the Court has determined that the vessel interests are not entitled to limit their liability, the justification to remain in federal court disappears. In the event the vessel owners are entitled to limit their liability, he originally requested that damages would be tried in federal court to a jury. But he has changed his position. In the interests of judicial efficiency and economy, Deranger now consents to conducting the damages portion of the case as a bench trial (if the damages portion of the case remains in federal court after a determination of the liability). He also filed a motion to strike his jury demand.

Joseph Colomb, the other personal injury claimant, did not move to bifurcate the trial. But in his memorandum accompanying the proposed joint case management order, he repeated his initial request that the damages issue be tried to a jury. In the event the vessel owners are not entitled to limit their liability, he

requests that the case be de-consolidated, and that he return to Section G, where he initiated a complaint for damages against the vessel interests, for further proceedings.

The vessel interests (the owners and operators for the three vessels) oppose bifurcation. They contend that all of the issues should be a bench trial presented to the Court in a single proceeding, including all aspects of liability and damages. The vessel interests point to the Limitation of Liability Act, the statute under which these liability proceedings are brought, which permits the Court to adjudicate all limitation proceedings and subsequent proceedings through a federal bench trial. The vessel interests contend that because this matter concerns complicated issues of liability and apportionment of liability between several distinct interests, only one fact finder should adjudicate the entire matter. Further, allowing multiple trials with different triers of fact is inefficient and confusing.

Both Deranger and the vessel interests recognize that the decision to bifurcate and to determine the fact finder for the damages portion of the trial addresses the Court's discretion. Their arguments insofar as they debate the tension between the Limitation of Liability Act and the Saving to Suitors clause are considered below.

B.

The Saving to Suitors clause and the Limitation of Liability Act inform competing interests the Court must consider. See In re Tetra Applied Techs. LP, 362 F.3d 338, 340 (5th Cir. 2004) ("Tension exists between the saving to suitors clause and the Limitation Act because the former affords suitors a choice of remedies, while the latter gives shipowners the right to seek limitation of their liability exclusively in federal court."). The Limitation of Liability Act, of course, allows a vessel owner to limit its liability for a damage or injury to the value of the vessel or its interest in the vessel in federal court. Lewis v. Lewis & Clark Marine, Inc., 531 U.S. 438, 446 (5th Cir. 2001). "The purpose of limitation proceedings is . . . to provide a marshalling of assets-the distribution pro rata of an inadequate fund among claimants, none of whom can be paid in full." Kattelman v. Otis Eng'g Corp., 696 F. Supp. 1111, 1113 (E.D. La. 1988) (J. Feldman). It promotes the equitable distribution of the limitation funds, and thus "protects the vessel owner's commercial risk." Id.

The Saving to Suitors clause of 28 U.S.C. § 1333(1) provides that "[t]he district courts shall have original jurisdiction, exclusive of the courts of the States, of any civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled." The clause provides claimants the ability to pursue their claims in state court. See In re Tetra Applied Techs. LP, 362 F.3d at 340.

9

It "was designed to protect remedies available at common law." Lewis, 531 U.S. at 446. Moreover, while a federal court sitting in admiralty is entitled to "adjudicate the whole case and grant full relief even though limitation is denied," it is not required to. Pershing Auto Rentals, Inc. v. Gaffney, 279 F.3d 546, 552 (5th Cir. 1960). The Court may permit claimants to pursue their claims in state court so as to not "compel[] [them] to litigate in an unchosen forum" by the law. Id.

The appropriateness of adjudicating the damages in federal court, or allowing Deranger to pursue his personal injury claims in state court, depends on several factors, not all of which are ripe for the Court's determination. If the liability portion of the trial is completed and the Court finds that the parties are not entitled to limit their liability, the purpose of adjudicating the limitation action in federal court is largely satisfied; there are no assets in the limitation fund to distribute. The claimants' right to pursue their claims in the forum of choice, however, would not have diminished. Without compelling competing interests, there is little reason for the Court to deny the claimant their choice of forum. The Court defers decision on whether Deranger may pursue his damages claims in a state court until the liability issues have been decided. Likewise, the Court will defer ruling on whether the damages issues will be heard by a jury if the personal injury claims proceed in federal court.

Even without determining the forum and jury issues for damages, the Court finds that bifurcating the issues of liability and damages will achieve convenience, efficiency, and clarity, far outweighing any minor prejudice the delay may inflict. The liability issues present largely different facts and issues than the damages portion. Although there is naturally some cross-over, as all issues concern the 2013 voyage, the first will consider the roles of the ships in causing the collision where the damages portion will focus on the claimants' injuries. This case presents complicated facts and issues, and bifurcation will allow the Court and the parties to entirely address one type of issue before turning to another. Although separating the trials will delay final adjudication of this matter by a few months, this litigation began three years ago; an additional few months will not overly burden the parties given the benefits of bifurcation.

Accordingly, IT IS ORDERED: that the motion to bifurcate is GRANTED in part. The parties will first adjudicate the issue of liability as a bench trial. After the conclusion of that trial, the Court will reconsider whether Deranger's claims shall be heard in state or federal court, and whether Colomb's damages claims heard in federal court will be conducted as a bench or jury trial.

IT IS FURTHER ORDERED: that the proposed case management order as to the liability issues to be tried is ADOPTED. Accordingly,

the liability issues to be determined in the initial bench trial are:

- Determination of liability of any party, the right to limitation of liability of any vessel interest, and apportionment of fault as between any and all parties (including personal injury claimants);
- The issues of negligence, unseaworthiness, and causation of the vessel interests;
- Upon showing of a prima facie case of negligence and/or unseaworthiness and causation against any vessel, any such vessel's right to exoneration from or limitation of liability will be tried including each such vessels' proof that any basis for liability was outside of its privity and knowledge;
- Any party contesting a vessel interest's right to exoneration from or limitation of liability will then offer evidence against any vessel interest's right to exoneration from or limitation of liability;
- If necessary, any additional proof regarding apportionment of fault.

New Orleans, Louisiana, February 8, 2018

_____
MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE